**Paul Samuel GUNNING, for himself and all others similarly situated, Plaintiff,**

v.

**Marvin T. RUNYON, Postmaster General, United States Postal Service, Defendant.**

No. 96–0452–Civ.

United States District Court, S.D. Florida, Miami Division.

April 17, 1998.

---

Austin Carr, Coral Gables, FL, for Plaintiff.

Teresa Davenport, Assistant U.S. Attorney, Miami, FL, for Defendant.

## ORDER

MIDDLEBROOKS, District Judge.

THIS CAUSE came before the Court upon Defendant's Motion for Summary Judgment (DE # 52) and upon review of the pending motions in this case. The Court has reviewed the pertinent portions of the record and is otherwise fully advised in the premises.

### Introduction

This case involves a claim of religious discrimination and free speech arising out of a United States Postal Office's failure to play a Christian radio station, WMCU, over the station loudspeakers after the employees so

chose. In an election in June, 1994, the postal employees conducted an election to determine which radio station would be played on the public address system in the Quail Heights Post Office. The top three radio stations, including WMCU, were played. After complaints, in October of 1994 a second election was conducted to select only one station. WMCU, a Christian radio station, was chosen. Upon the results of the second election, due to the previous complaints over WMCU, the post office turned off the station radio and allowed employees to wear headsets or have small radios at their workplace.

On February 23, 1996, the initial Complaint in this matter was filed, alleging constitutional and statutory violations arising out of the above. On May 22, 1996, Plaintiff moved to certify the initial class of all 170 workers who were employees at the Quail Heights Radio Station since August of 1994, as they comprised the class of the electorate which was given the right to chose the radio station to be played over the public address system. On March 6, 1997, the Court adopted the Magistrate Judge's Report and Recommendation in this matter and denied without prejudice the initial motion to certify this matter as a class action. On August 30, 1996, an Amended Class Action Complaint was filed, alleging violations of Title VII (Count I); infringement of his constitutional rights to freedom of religion (Count II) and freedom of speech (Count III); and violations of the Religious Freedom Restoration Act (RFRA) (Count IV). On September 16, 1997, Plaintiff filed a Second Motion to Certify the Class Action, and on April 14, 1998, we denied this motion as to the classes proposed by Plaintiff. We now consider the motion by Defendant for summary judgment, filed on September 9, 1997.

## Standard of Review

The standard to be applied in reviewing summary judgment motions is contained in Rule 56(c) of the Federal Rules of Civil Procedure:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.

Summary judgment may be entered only where there is *no* genuine issue of material fact. The moving party bears the burden of meeting this standard. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). As the Eleventh Circuit has explained:

In assessing whether the movant has met [its] burden, the courts should view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. *Adickes*, 398 U.S. at 157, 90 S.Ct. 1598; *Marsh*, 651 F.2d at 991. All reasonable doubts about the facts should be resolved in favor of the non-movant. *Casey Enterprises v. Am. Hardware Mutual Ins. Co.*, 655 F.2d 598 (5th Cir.1981). If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial. *Marsh*, 651 F.2d at 991; *Lighting Fixture & Elec. Supply Co. v. Continental Ins. Co.*, 420 F.2d 1211 (5th Cir.1969). Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. *Lighting Fixture & Elec. Supply Co.*, 420 F.2d at 1213. If reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment. *Impossible Electronic*, 669 F.2d at 1031; *Croley v. Matson Navigation Co.*, 434 F.2d 73 (5th Cir.1970).

Moreover, the party opposing a motion for summary judgment need not respond to it with any affidavits or other evidence unless and until the movant has properly supported the motion with sufficient evidence. *Adickes*, 398 U.S. at 160, 90 S.Ct. 1598; *Marsh*, 651 F.2d at 991. The moving party must demonstrate that the facts underlying all the relevant legal questions raised by the pleadings or otherwise are not in dispute, or else summary judgment will be denied notwithstanding that the non-moving party has introduced no evidence whatsoever. *Brunswick Corp. v. Vineberg*, 370

F.2d 605, 611–12 (5th Cir.1967). *See Dalke v. Upjohn Co.*, 555 F.2d 245, 248–49 (9th Cir.1977).

*Clemons v. Dougherty County*, 684 F.2d 1365, 1368–69 (11th Cir.1982); *see also Amey, Inc. v. Gulf Abstract & Title, Inc.*, 758 F.2d 1486 (11th Cir.1985), *cert. denied*, 475 U.S. 1107, 106 S.Ct. 1513, 89 L.Ed.2d 912 (1986). The United States Supreme Court has provided significant additional guidance as to the evidentiary standard which district courts should apply when ruling on a motion for summary judgment:

> [The summary judgment] standard mirrors the standard for a directed verdict under Federal Rules of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. *Brady v. Southern R. Co.*, 320 U.S. 476, 479–80, 64 S.Ct. 232, 88 L.Ed. 239 (1943).

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court in *Anderson* further acknowledged that "[t]he mere existence of a scintilla of evidence in support of the position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Id.* at 243, 106 S.Ct. 2505. If the non-movant in a summary judgment action fails to adduce evidence which would be sufficient, when viewed in a light most favorable to the non-movant, to support a jury finding in his favor, summary judgment may be granted. *Id.* at 254–55.

In a companion case, the Supreme Court declared that a non-moving party's failure to prove an essential element of its claim renders all factual disputes as to that claim immaterial and requires the granting of summary judgment:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–33, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). We measure the motion for summary judgment against these standards.

### Analysis

Defendant bases the motion for summary judgment upon four arguments. First, Defendant contends that Plaintiff has failed to exhaust his union remedies. Second, Defendant argues that Plaintiff has failed to state a claim under Title VII, as Plaintiff has not established a *prima facie* case and Defendant has provided a reasonable accommodation. Third, Defendant states that Plaintiff has failed to establish a cause of action under RFRA. Fourth, Defendant suggests that Title VII is Plaintiff's exclusive remedy and accordingly the constitutional claims should be dismissed on summary judgment. We will address each argument as it pertains to each of the Counts in Plaintiff's Amended Complaint.

### I. Count I: The VII Claim

In Count I of the Amended Complaint, Plaintiff alleges that the policies and practices as outlined violate Title VII and, as a result, "Plaintiff and all members of the class have been deprived of the valuable rights and in particular the freedom of religion and Plaintiff and all others similarly situated are entitled to the relief set forth below." (Amended Complaint, ¶ 14).

██ Religious discrimination claims under Title VII are analyzed under two legal theories: "disparate treatment" and/or "failure to accommodate." It is not clear upon review of the Amended Complaint under which legal theory Plaintiff is proceeding. Plaintiff's Title VII case rests on the allegation that failure to play the radio station deprived him and all others similarly situated of the free-

dom of religion to listen to a chosen Christian radio station. For the purposes of this summary judgment motion, we will broadly construe Plaintiff's Amended Complaint so as to analyze Plaintiff's claims under both legal theories.

■ To prevail under a Title VII theory of disparate treatment, Plaintiff must show that he is, or was, treated less favorably than other employees because of his religious beliefs. *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977); *Mann v. Frank*, 7 F.3d 1365, 1370 (8th Cir.1993); 42 U.S.C. § 2000e–2(a)(1). Title VII of the Civil Rights Act of 1964 prohibits an employer from discrimination on the basis of, *inter alia*, religion. 42 U.S.C. § 2000e–2(a) provides:

> It shall be an unlawful employment practice for an employer—
>
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms conditions, or privileges of employment, because of such individual's . . . religion; or
>
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual or employment opportunities or otherwise adversely affect his status as an employee, because of such individual's . . . religion . . .

Title VII claims are evaluated under the indirect, three step burden-shifting method of proof analysis developed in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) and *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). At the first stage of this approach, Plaintiff bears the burden of establishing the four elements of a *prima facie* case of discrimination. Adapting the *prima facie* elements of a race or gender Title VII claim to the present allegations of religious discrimination, plaintiff establishes a *prima facie* case of disparate treatment discrimination if he can show, through direct or indirect evidence, that: (1) he is a member of or practices a particular religion; (2) he is quali-

fied to perform the job at issue; (3) he has suffered some adverse employment action; and (4) someone outside the protected class of which he is a member was treated differently. *See Mann v. Frank*, 7 F.3d 1365, 1370 (8th Cir.1993); *Breech v. Alabama Power Co.*, 962 F.Supp. 1447, 1456 (S.D.Al.1997); *see also McDonnell Douglas*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668; *Weaver v. Casa Gallardo, Inc.*, 922 F.2d 1515 (11th Cir.1991).

Following the above analysis, for the purposes of summary judgment we find that Plaintiff has satisfactorily established the first two requirements of the *prima facie* case. Plaintiff has satisfactorily established that he is a member of a particular religion. There is no evidence to indicate that he was not qualified to perform his job.

Plaintiff's claim is that failure to play the voted-upon radio station has caused "inconvenience, loss of enjoyment of life, and other non-pecuniary losses . . ." (Amended Complaint, ¶ 12) and/or deprived him and all others similarly situated of "valuable rights and in particular the freedom of religion." (Amended Complaint, ¶ 14). Plaintiff's Title VII claim in this case seems to be a claim based upon the "terms, conditions or privileges of employment" provision pursuant to 42 U.S.C. § 2000e–2(a)(1). Accordingly, the third requirement of the *prima facie* case, establishing some adverse employment action, requires Plaintiff to show some adverse action with regards to the terms, conditions, or privileges of employment. Plaintiff's claim rests upon the idea that failure to play the voted-upon Christian radio station at work constitutes such action.

■ However, Plaintiff has adduced no evidence from which we may conclude that there is a genuine issue of material fact as to any adverse employment action under Title VII. There is no evidence that the terms of his employment were altered by the failure to play the station that the employees had voted upon. There is also no evidence that the conditions of his employment were adversely affected. (Affidavit of Gunning, pp. 3–4.) We find no caselaw indicating that the right to listen to a certain kind of music, even

that which has been approved of by majority employee vote, is a privilege of employment such that denial of that right is properly cognizable under Title VII. Plaintiff himself admits that neither the terms nor conditions of his employment were implicated and that the "privilege" of listening to music over the public address system was outside the union agreement and thus solely a matter of management preference. Inconvenience and loss of enjoyment of life, while certainly meaningful to Plaintiff, are not cognizable under Title VII absent some adverse employment action, and we find that Plaintiff has failed to show any such action.

■ As we find that Plaintiff has not established his *prima facie* case for maintenance of a Title VII religious discrimination disparate treatment claim, we need proceed no further in our analysis. *See Hawkins v. Ceco Corp.,* 883 F.2d 977, 981 (11th Cir.1989). Even if it is assumed that the plaintiff could make a *prima facie* case, however, application of the *McDonnell Douglas* analysis requires entry of summary judgment for the Defendant. The second stage imposes a burden of production on the employer to articulate a legitimate, non-discriminatory reason for the action. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207; *Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181 (11th Cir.1984). Despite two elections, employees were unable to agree on an acceptable radio station; Plaintiff's own testimony is that he had to tolerate music he found offensive. In order to avoid further conflict, the Post Office thus terminated all use of the public radio station and allowed employees to use walkmans or other individual radio-type devices. The Court finds that this is a legitimate, nondiscriminatory reason for its actions which rebuts the presumption of discrimination and shifts the burden back to Gunning.

In the final stage of the analysis, the employee must show that the proffered reasons are a pretext for unlawful discrimination. *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095. The plaintiff has the opportunity to come forward with evidence, including the previously produced evidence established in the

*prima facie* case, sufficient to permit a reasonable fact finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision. *Combs v. Plantation Patterns,* 106 F.3d 1519, 1528 (11th Cir.1997), *citing McDonnell Douglas, supra.* This demonstration merges with the plaintiff's ultimate burden of showing that the defendant discriminated against the plaintiff. *Holifield v. Reno,* 115 F.3d 1555, 1565 (11th Cir.1997); *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 511, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993). Plaintiff provides us with no evidence that these reasons are pretextual. We cannot find that Plaintiff has carried either his initial burden nor his ultimate burden under Title VII such that a genuine issue of material fact is established as to the disparate treatment claim.

■ However, it is also possible that Plaintiff is proceeding under a Title VII "failure to accommodate" theory. Plaintiff must show that he possessed a bona fide religious belief that was not reasonably accommodated. *Chalmers v. Tulon Company of Richmond,* 101 F.3d 1012, 1019 (4th Cir.1996). 42 U.S.C. § 2000e(j) states that:

> The term "religion" includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's religious observance or practice without undue hardship on the conduct of the employer's business.

As the Eleventh Circuit has noted with regards to this provision, "The phrases 'reasonably accommodate' and 'undue hardship' are not defined within the language of Title VII. Thus, the precise reach of the employer's obligation to its employee is unclear under the statute and must be determined on a case-by-case basis." *Beadle v. Hillsborough County Sheriff's Department,* 29 F.3d 589, 592 (11th Cir.1994). Once again applying the Title VII burden-shifting analysis to the case at bar, a *prima facie* case of failure to accommodate requires Plaintiff to prove: (1) a bona fide religious belief conflicting with an employment requirement; (2) that he informed his employer of the religious belief; and (3) that he was discharged or otherwise penalized for failure to comply with the con-

flicting requirement. *See Beadle v. Hillsborough County Sheriff's Department, supra; Beadle v. City of Tampa,* 42 F.3d 633, 636 n. 4 (11th Cir.1995); *see also Chalmers v. Tulon Company Richmond,* 101 F.3d 1012, 1019 (4th Cir.1996); *Breech v. Alabama Power Co.,* 962 F.Supp. 1447, 1459 (S.D.Al.1997).

■ There is no evidence that Plaintiff possesses a bona fide religious belief that conflicts with an employment requirement. The basis for this action is Plaintiff's objection to the termination of the Christian music station; it is possible that if listening to Christian music were a bona fide religious requirement or belief, Defendant's actions might implicate accommodation issues. However, Plaintiff testified that listening to Christian music was not a requirement of his religion (Exhibit "A" to Defendant's Motion for Summary Judgment) and Plaintiff has provided us with no other bona fide religious beliefs that he claims are in conflict with an employment requirement. Neither has Plaintiff shown that he notified his employer of any such beliefs, nor that adverse employment action ensued as a result. *See supra.* Accordingly, we find that Plaintiff fails to establish a *prima facie* case of "failure to accommodate" under Title VII.

■ We also note for the record that even if such a *prima facie* case were properly shown, summary judgment for Defendant would still be appropriate. If Plaintiff does establish his *prima facie* case by a preponderance of the evidence, the burden would shift to the employer to show either that (1) it offered to or did reasonably accommodate the plaintiff's religious needs or (2) it could not reasonably accommodate plaintiff's religious needs. *Ansonia Board of Education v. Philbrook,* 479 U.S. 60, 68–69, 107 S.Ct. 367, 371, 93 L.Ed.2d 305 (1986); *see also Chalmers, supra* at 1019. In an effort at a satisfactory accommodation of the differing music preferences, the postal office allowed all employees to wear headsets or have small radios at their workplace where the individuals could listen to whatever type of music they preferred. We find that this would constitute a reasonable religious accommodation under Title VII. Because Plaintiff has failed to carry his burden of establishing a claim of

reasonable accommodation under a Title VII religious discrimination action, we find that summary judgment is warranted for Defendant as to Count I of the Amended Complaint.

## II. Count II: Constitutional Right to Freedom of Religion

■ Defendant argues that Plaintiff's constitutional claim of violation of freedom of religion is precluded as Title VII is the exclusive remedy for federal employment discrimination claims. Section 717 of the Civil Rights Act of 1964 proscribes federal employment discrimination and establishes an administration and judicial enforcement system. Section 717(a) provides that "all personnel actions affecting employees or applicants for employment ... in the United States Postal Service and the Postal Rate Commission ... shall be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–16(a). In *Brown v. General Services Administration,* 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976), the Supreme Court held that the intent of Congress was to "create an exclusive, pre-emptive administrative and judicial scheme for the redress of federal employment discrimination" and accordingly that § 717 of the Civil Rights Act of 1964, as added to by § 11 of the Equal Employment Opportunity Act of 1972, "provides the exclusive judicial remedy for claims of discrimination in federal employment." *Id.* at 829, 835, 96 S.Ct. 1961. *See also Porter v. Adams,* 639 F.2d 273, 278 (5th Cir.1981) (§ 717 is the exclusive remedy for charges brought against federal employers, including reprisals); *Canino v. U.S. E.E.O.C.,* 707 F.2d 468, 472 (11th Cir.1983) (dismissal of § 1981 claims against EEOC proper as § 717 is the exclusive remedy of federal employee for alleged employment discrimination); *Grier v. Secretary of the Army,* 799 F.2d 721, 724 n. 2 (11th Cir. 1986) (§ 717 exclusive remedy for civilian employee suing army for racial discrimination and denial of due process).

Plaintiff argues first that in cases where the government is the employer, the court must consider both the First Amendment and Title VII in determining the legitimacy

of the employer's actions, and cites *Brown v. Polk County, Iowa*, 61 F.3d 650, 654 (8th Cir.1995) in support of his position. However, that case did not involve claims of job discrimination in federal employment context; it involved a claim of job discrimination in a state employment context and is thus inapplicable to the case at bar. *See Brown v. General Services Administration*, 425 U.S. 820, 826–833, 96 S.Ct. 1961, 1964–1967, 48 L.Ed.2d 402 (1976) (discussing congressional intent with regards to affording federal employees redress for federal job discrimination exclusively under Title VII). Plaintiff's next argument is that he reads *Brown v. General Services Administration* to stand for the proposition that Title VII may preempt other laws, but cannot preempt constitutional rights and that Congress did not have the authority to restrict the authority of the federal courts to enjoin religious discrimination in the United States Postal Service. We are unpersuaded by Plaintiff's analysis of *Brown v. General Services Administration*. We find that *Brown*, as well as numerous cases applying it, clearly establish that Plaintiff's constitutional claim of religious employment discrimination by the United States Postal Service is a claim properly cognizable only under Title VII. We thus award summary judgment to Defendant as to Count II of the Amended Complaint.

### III. Count III: Violation of the Right of Free Speech

Plaintiff's constitutional claim as to free speech is based upon the claim that his right to free speech includes the right to listen to protected free speech such as the religious speech on WMCU, and that not playing WMCU, or singling out WMCU as the reason not to play the radio over the station audio system, is viewpoint discrimination in violation of the First Amendment. As this argument is a free speech and not an employment discrimination claim, Plaintiff is not limited to Title VII for recourse.

We analyze the constitutionality of restrictions on access to public property for the purposes of speech under the framework initially set out in *Perry Education Assoc. v. Perry Local Educator's Ass'n.*, 460 U.S. 37, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983). In *Perry*, the Supreme Court established three forum categories and the appropriate analysis for each one, stating that "the existence of a right of access to public property and the standard by which limitations upon such a right must be evaluated differ depending on the character of the property at issue." *Perry*, 460 U.S. at 44, 103 S.Ct. at 954. It is uncontested that the private work area of the Post Office constitutes a nonpublic forum, the most restricted forum. In discussing a nonpublic forum, the Supreme Court held that:

> Implicit in the concept of the nonpublic forum is the right to make distinctions in access on the basis of subject matter and speaker identity. These distinctions may be impermissible in a public forum but are inherent and inescapable in the process of limiting a nonpublic forum to activities compatible with the intended purpose of the activity. The touchstone for evaluating these distinctions is whether they are reasonable in light of the purpose which the forum at issue serves. *Perry*, 460 U.S. at 49, 103 S.Ct. at 957.

In other words, "control over access to a nonpublic forum can be based on subject matter and speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral." *Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 806, 105 S.Ct. 3439, 3451, 87 L.Ed.2d 567 (1985), citing *Perry, supra.*

The intended purpose of the United States Postal Service is to provide an efficient national postal service and each post office thus engages in the necessary mail functions of sorting and delivering mail. Music to which various employees object, regardless of the message of that music, interferes with an orderly and productive workplace environment. The decision by management to deny access to the public address system for the purpose of playing recreational music seems to us reasonable in light of the purpose of the postal service. When we assess all of the surrounding circumstances, we are of the view that the personal music compromise allowed further supports the reasonableness of the limitations on access to the public

address system. *See Perry*, 460 U.S. at 53, 103 S.Ct. at 959.

Plaintiff argues, however, that the actions of Defendant in singling out the Christian radio station as a reason for refusing to play any radio station over the public address system indicates that the decision was not viewpoint neutral. The fact that the catalytic event for limiting access to the public address system was the playing of Christian music does not necessarily change our finding. There is no evidence in the record that the decision by the postal office management to deny all access to the public address system was viewpoint based; that is, based upon management's opposition to the message of the music. Rather, it appears that the objections to the music and disruption that those objections created were the motivating factors. Plaintiff also has a constitutional right to listen to a radio talk show espousing certain political views, for example, but were the playing of such a station over the public address system to evoke protest and threaten to disrupt the workplace, the government as employer has the right to reserve the forum "for its intended purposes." *Perry*, 460 U.S. at 46, 103 S.Ct. at 955.

Plaintiff cites *Lamb's Chapel v. Center Moriches Union Free School District*, 508 U.S. 384, 113 S.Ct. 2141, 124 L.Ed.2d 352 (1993) for the proposition that a policy of exclusion of only religious groups or groups espousing a religious message is impermissible. We agree. Were this a case where the postal service opened the public address system to radio but refused to play WMCU on the basis of its religious message, this would indeed implicate constitutional rights. "The principle that has emerged from our cases is that the First Amendment forbids the government to regulate speech in ways that favor some viewpoints or ideas at the expense of others." What the government may not do, and did not do in this case, is afford access to the forum based on the viewpoint of the message. *See Lamb's Chapel v. Center Moriches Union Free School District*, 508 U.S. 384, 394, 113 S.Ct. 2141, 2147–48, 124 L.Ed.2d 352 (1993). However, the federal government, "no less than a private owner of property, has power to preserve the property

under its control for the use to which it is lawfully dedicated." *Greer v. Spock*, 424 U.S. 828, 836, 96 S.Ct. 1211, 1217, 47 L.Ed.2d 505 (1976) (internal citations omitted). As a result, the government has the right simply to close the forum, as it did in this case. Indeed, the post office's solution was both practical and the only viable solution to the tension presented. Were the post office to play a Christian radio station over the office public address system, even by employee vote, such an action would risk violation of the Establishment Clause. The action of playing Christian music—or, of all possible religious music selections, only Christian music and two secular stations—over a loudspeaker in a federal governmental office arguably manages to implicate all three prongs of the *Lemon* test. Such an action possesses. very little secular purpose, has a primary purpose or effect of advancing a particular religion, Christianity, and promotes excessive entanglement with religion. *Lemon v. Kurtzman*, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971).

Under the circumstances, we do not find that the Quail Heights Post Office's decision to eliminate access to the public address system for the purposes of playing a chosen radio station constituted an impermissible burden on the First Amendment, and we accordingly award summary judgment to Defendant on Count III.

## IV. Count IV: Religious Freedom Restoration Act (RFRA)

Count IV of the Amended Complaint alleges a violation of the Religious Freedom Restoration Act of 1993 (RFRA), 42 U.S.C. § 2000bb *et seq.* We first note that the constitutional viability of RFRA to this action is not settled. In *City of Boerne v. Flores*, —— U.S. ——, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997), the Supreme Court held that RFRA exceeded Congress' power under § 5 of the Fourteenth Amendment and was thus unconstitutional as applied to the states. The constitutionality of RFRA as applied to the federal government has not yet been clarified, either by the Supreme Court or within the Eleventh Circuit. While the trend seems to be to limit *Boerne* to its holding, it

remains a fairly open question. *See, e.g., Alamo v. Clay,* 137 F.3d 1366, 1998 WL 112842, *2 (D.C.Cir.1998) (assuming without deciding RFRA is constitutional as applied to federal law); *In re Young,* 141 F.3d 854, 854 (8th Cir.1998) (holding RFRA constitutional as applied to federal law); *U.S. v. Grant,* 117 F.3d 788, 792 n. 6 (5th Cir.1997) (noting *City of Boerne* "arguably casts some doubt on the continued viability of RFRA" while declining to address the issue).

However, for the purposes of the instant motion, we will assume that RFRA presents a potential cause of action under which Plaintiff may proceed. The Religious Freedom Restoration Act, 42 U.S.C. § 2000bb *et seq.,* was enacted in 1993. It restored the "compelling interest" test as set forth in *Sherbert v. Verner,* 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963) and *Wisconsin v. Yoder,* 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972) as the appropriate method for analysis of free exercise claims. 42 U.S.C. § 2000bb(b)(1). In *Sherbert,* the Supreme Court held that "any incidental burden on the free exercise of appellant's religion may be justified by a compelling state interest in the regulation of a subject within the State's constitutional power to regulate." *Sherbert v. Verner,* 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963) (internal citations omitted). As a result, to establish a claim under RFRA, Plaintiff must first establish that he possesses a religious belief and second that governmental action or regulation imposes a burden on the free exercise of his religion. We then consider whether there is a compelling state interest justifying the state action. *Wisconsin v. Yoder,* 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972); *Sherbert v. Verner,* 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963).

We find that Plaintiff fails to carry his burden to establish a *prima facie* case under the Religious Freedom Restoration Act. While we find that Plaintiff has established that he possesses a religious belief and subscribes to the tenets of his Baptist faith, by his own admission listening to Christian radio is not a requirement of his faith, nor would failure to listen to the radio station burden the practice of his faith. We are doubtful that an internal, unofficial employee election as to what radio station should be played over the public address system can be construed as constituting "governmental action," and we find no evidence to support that characterization. However, even assuming we accept such a contention, there is no evidence in the record that the decision to terminate playing WMCU imposes a burden on the free exercise of his religion. *See, e.g., Werner v. McCotter,* 49 F.3d 1476, 1480 (10th Cir.1995) (government regulation must significantly inhibit or constrain conduct or expression that manifest some central tenet of a prisoner's individual beliefs); *Bryant v. Gomez,* 46 F.3d 948, 949 (9th Cir.1995) (failure to hold full Pentecostal service not a violation of free exercise as Plaintiff failed to show that all aspects of service were mandated by faith and practice allowed in prison was sufficient). This is particularly true as Plaintiff is still permitted to listen to the radio station of his choice via headphones or other personal listening devices. Because we find that Plaintiff has not established a valid claim under RFRA, we not need proceed to an analysis of the compelling state interest.

Additionally, the Supreme Court has indicated that the interests of the State in avoiding a violation of the Establishment Clause may be characterized as "compelling." *Widmar v. Vincent,* 454 U.S. 263, 271, 102 S.Ct. 269, 275, 70 L.Ed.2d 440 (1981). It is likely in light of our concerns about potential violations of the Establishment Clause that we would find the interests of the Post Office would be compelling such that their actions were justified under RFRA. Based upon the foregoing, we find that Plaintiff has failed to establish a case under the Religious Freedom and Restoration Act and we grant summary judgment to Defendant on Count IV of the Amended Complaint.

### Conclusion

Based upon consideration and on the foregoing, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion for Summary Judgment (DE # 52) is hereby GRANTED, and summary judgment is hereby entered in favor of Defendant

as to all counts of the Amended Complaint.

2. Any and all pending motions are hereby DENIED AS MOOT.

3. This case is hereby CLOSED.