**Tony ALAMO f/k/a Bernie Lazar Hoffman, and Alamo Christian Church, Appellants,**

**v.**

**Jasper R. CLAY, Jr., et al., Appellees.**

No. 96–5259.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 21, 1998.

Decided March 17, 1998.

Harry Kresky, New York City, argued the cause and filed the briefs for appellants.

Daniel E. Ellenbogen, Washington, DC, and Tony Alamo, appearing pro se, entered appearances.

R. Craig Lawrence, Assistant U.S. Attorney, Washington, DC, argued the cause for appellees, with whom Mary Lou Leary, U.S. Attorney, Washington, DC, at the time the brief was filed, was on the brief. Sherri E. Harris, Assistant U.S. Attorney, entered an appearance.

Before: EDWARDS, Chief Judge, WALD and ROGERS, Circuit Judges.

EDWARDS, Chief Judge:

■ In this case, the wrong claim was brought by the wrong party in the wrong jurisdiction. Appellant Alamo Church asserts a claim under the Religious Freedom Restoration Act challenging the United States Parole Commission's decision denying parole to its pastor. It is well settled that a parole decision can be challenged only by the individual denied parole through a habeas action brought in the jurisdiction in which he is incarcerated. In any case, we find that the injuries alleged by the church—loss of the services of its pastor and damage to its reputation—fail to satisfy the requirements for standing under Article III of the U.S. Constitution.

## I. BACKGROUND

Tony Alamo is founder and pastor of the Christian Church of Alamo ("Alamo Church" or "the church"). In September 1994, Alamo was sentenced by the Federal District Court for the Western District of Tennessee to six years in prison for one count of filing a false income tax return and three counts of failing to file. He is incarcerated in a federal correctional institution in Texarkana, Texas. In June 1995, a parole examiner recommended that Alamo be paroled. In March 1996, the United States Parole Commission ("the Commission") denied Alamo's request for parole. *See* Bernie Hoffman, Reg. No. 305–112 (U.S. Parole Comm'n Mar. 14, 1996) (notice of action on appeal), *reprinted in* Appendix ("App.") 29–30 (hereinafter "Comm'n Decision").

Alamo and the church then brought suit under the Religious Freedom Restoration Act of 1993, 42 U.S.C. § 2000bb–1 to –4 (1994) ("RFRA"), claiming that the denial of Alamo's parole substantially burdened their exercise of religion and was not justified by a compelling government interest. They sought a declaration that the Commission's determination was illegal and an order directing Alamo's release based upon the parole examiner's recommendation.

The District Court dismissed the complaint in its entirety. The court reasoned that, although Plaintiffs' complaint was framed as an action under the RFRA, the real purpose of their claims is to challenge the duration of Tony Alamo's sentence, a matter which is delegated solely to the discretion of the Parole Commission and cannot be decided by the district court. *Alamo v. United States Parole Comm'n*, No. 96–01446, slip. op. (D.D.C. June 30, 1996). Moreover, the trial court held that a federal prisoner challenging the determination of parole eligibility is required to bring his claim as a habeas action in the jurisdiction in which he is incarcerated. *Id.* (citing *Chatman–Bey v. Thornburgh*, 864 F.2d 804, 808–09 (D.C.Cir.1988) (en banc); 28 U.S.C. § 2241).

The church alleges that the Parole Commission's decision violated *its* rights under the RFRA and the Free Exercise Clause of the First Amendment—not just Tony Alamo's individual rights. Essentially, the church argues that the Commission's decision was significantly influenced by its discriminatory views of Alamo Church, causing the church reputational injury as well as depriving it of the services of its pastor. To redress these injuries, the church seeks an order directing the Commission to adopt the parole examiner's recommendation that Alamo be paroled. Alternatively, it requests a declaratory judgment stating that the Commission impermissibly based its decision on derogatory views of Alamo Church in violation of the RFRA and the First Amendment and ordering the Commission to reconsider Alamo's parole without taint of religious discrimination.

The Government moved for summary affirmance of the District Court's decision. A

motions panel affirmed the District Court's decision as to Tony Alamo's claim, on the ground that the only avenue through which a prisoner can challenge the Parole Commission's determination of his parole eligibility is through a habeas action brought in the jurisdiction in which he is incarcerated. The motions panel also acknowledged that Alamo Church cannot bring a habeas action on Alamo's behalf but deferred to the merits panel the question of whether the church presents a valid claim under the RFRA or the First Amendment for which relief can be granted. *See Alamo v. Clay,* No. 96–5259, slip op. (D.C.Cir. Apr. 22, 1997) (order granting summary affirmance in part and denying it in part).

As enacted, the RFRA prohibits any "branch, department, agency, instrumentality, [or] official" of federal or state government "or other persons acting under color of [federal or state] law" from "substantially burden[ing] a person's exercise of religion" unless the government can demonstrate that the burden "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that ... interest." 42 U.S.C. §§ 2000bb–1, 2000bb–2(1) (1994). In *City of Boerne v. Flores,* —— U.S. ——, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997), the Supreme Court held that the RFRA exceeds Congress' enforcement powers under section 5 of the Fourteenth Amendment. Appellants submit that the RFRA still applies to federal agencies. *See* Appellants' Opening Brief at 28. The Government does not contest this claim. For the purposes of this appeal, we assume, without deciding, that the RFRA applies to the federal government, notwithstanding the Supreme Court's decision in *City of Boerne.*

## II. ANALYSIS

We review the District Court's dismissal of Appellants' complaint *de novo. National Taxpayers Union, Inc. v. United States,* 68 F.3d 1428, 1432 (D.C.Cir.1995).

■ Although the church pleads this case under the RFRA, it is essentially challenging the duration of Tony Alamo's sentence. It is well settled that a parole decision can be challenged only *by the individual denied pa-*

*role* through a *habeas action* brought *in the jurisdiction in which he is incarcerated. See* 28 U.S.C. § 2241 (1994); *Chatman–Bey v. Thornburgh,* 864 F.2d 804, 808–09 (D.C.Cir.1988) (en banc) (citing *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973)). In such an action, a prisoner may assert the claim alleged here— *i.e.,* that the Commission's decision was based upon an impermissible factor. Even if a court considering such a claim were to find that the Commission's decision was impermissibly influenced by religious discrimination, however, at most it could order the Commission to reconsider Alamo's parole in a manner that does not violate the RFRA or the First Amendment. The sole power to grant or deny parole lies within the Commission's discretion; neither this court nor the District Court has authority to grant parole. *See* 18 U.S.C.A. §§ 4203(b), 4218(d) (West Supp.1997); *Guerra v. Meese,* 786 F.2d 414, 418 (D.C.Cir.1986) (citing *Billiteri v. United States Bd. of Parole,* 541 F.2d 938, 944 (2d Cir.1976)).

■ There is a long history of habeas review of parole decisions. *See Chatman–Bey,* 864 F.2d at 807–08. Appellants point to nothing in the statutory framework or in case law governing the review of parole decisions to demonstrate that a third party such as the church can challenge a decision of the Parole Commission. Instead, Alamo Church attempts to get around this jurisdictional barrier by suggesting that the Commission's decision has caused *the church*—not just Tony Alamo—cognizable injuries, and that these injuries provide the church with a basis for a cause of action under the RFRA. However, Appellants do not identify any previous RFRA cases involving a third-party challenge to an administrative decision or offer argument specifically addressing why the RFRA should be construed to provide a cause of action in such an unusual posture. Thus, we decline to read into the RFRA a congressional intent to upset the long-standing framework limiting review of parole decisions.

■ Even if the RFRA or the Free Exercise Clause could be construed to provide a

third party with a basis for challenging the Commission's decision, however, the complaint would nevertheless be dismissed, because the injuries alleged by Alamo Church fail to satisfy the well-established requirements for standing under Article III of the U.S. Constitution. "In order to satisfy the irreducible constitutional minimum of standing, a litigant must demonstrate that it has suffered a concrete and particularized injury that is: (1) actual or imminent; (2) caused by, or fairly traceable to, an act that the litigant challenges in the instant litigation; and (3) redressable by the court." *Florida Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663 (D.C.Cir.1996) (en banc) (internal quotes and citations omitted).

Alamo Church lost the services of its pastor as a consequence of Tony Alamo's criminal conduct, for which he was convicted and sentenced to jail. A convicted prisoner has no absolute right to parole; rather, the issue of parole is delegated to the Commission's discretion. *See* 18 U.S.C.A. §§ 4206, 4218(d) (West Supp.1997). Thus, the church's alleged injury was caused by Alamo's criminal conduct for which he was convicted, not by the Commission's subsequent decision denying him parole. Accordingly, the church's loss of its pastor's services is not fairly traceable to the Commission's allegedly illegal parole decision. *Florida Audubon Soc'y*, 94 F.3d at 663 (in analyzing the "causation" element of constitutional standing, this court asks whether the challenged acts of the defendant—as opposed to the acts of a third party—caused the plaintiff's particularized injury).

The church asserts, however, that the continued absence of Alamo's pastoral services is a separate, cognizable injury following from the Commission's denial of parole. It is true that the denial of parole has perpetuated the consequences of Alamo's criminal conduct by causing him to remain in custody, whereas a grant of parole would have released him from custody. As we have already explained, however, judicial review of the Parole Commission's decision is a remedy for Alamo to pursue through a habeas action. Casting Alamo's continued incarceration in terms of its effect on the church is a specious attempt to get around case law limiting the review of parole decisions to habeas actions.

■ In any case, if we construe the continued absence of Alamo's pastoral services following the Commission's denial of parole as a separate injury, this injury still fails to satisfy the requirements of Article III. As we asserted earlier, this court has no power to grant parole, and, moreover, even if the Commission were to grant Alamo's request for parole, it has no control over whether, following his release, Alamo would return to his former role as pastor of Alamo Church. Although it is plain that Alamo's conviction initially disrupted his pastoral relationship with Alamo Church, the church simply presumes (and implicitly asks the court to presume) that a grant of parole would restore it. *See* Appellants' Reply Brief at 3. The burden rests on the plaintiff to "allege specific, concrete facts demonstrating that the challenged practices harm *him*, and that he personally would benefit in a tangible way from the court's intervention." *Warth v. Seldin*, 422 U.S. 490, 508, 95 S.Ct. 2197, 2210, 45 L.Ed.2d 343 (1975). The church has failed to meet this burden here. Because it is purely speculative whether, following his release on parole, Tony Alamo would return as pastor of Alamo Church, a third-party causation problem remains. *Cf. Allen v. Wright*, 468 U.S. 737, 757–58, 104 S.Ct. 3315, 3327–28, 82 L.Ed.2d 556 (1984) (parents of black public school children charging that the IRS had not fulfilled its obligation to deny tax-exempt status to racially discriminatory schools lacked standing because "it is entirely speculative ... whether withdrawal of a tax exemption from any particular school would lead the school to change its policies"); *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 42–43, 96 S.Ct. 1917, 1926–27, 48 L.Ed.2d 450 (1976) (indigents injured by denial of hospital services challenging an IRS decision to exempt hospitals from taxation without regard to whether they provided care to indigents lacked standing because the connection between plaintiff's injuries and the IRS ruling was "speculative" where the hospitals' denials of service could "result from decisions made by the hospitals without regard to the tax implications"). Even if we had specific information addressing Alamo's

intentions after his release from prison, we doubt that this would amount to cognizable injury sufficient to overcome jurisdictional objections to the church's law suit. We need not tarry on this point, however, for it is clear here that the church has failed to cite specific, concrete facts to support its claim.

■ Alamo Church also asserts that it was stigmatized by the Commission's decision denying Tony Alamo parole. Although injury to an organization's reputation is sufficient in some circumstances to support standing, *see, e.g., Southern Mut. Help Ass'n, Inc. v. Califano*, 574 F.2d 518, 524 (D.C.Cir.1977), the church's claim of reputational injury fails, on several grounds, to provide a basis for Article III standing in the instant case. First, we cannot find anything in the Commission's actions supporting the church's claim that the Commission's decision stigmatized the church. The Commission expressly stated that its decision was "made without regard to the issue of whether or not [Tony Alamo's] religious organization is accurately described as a 'cult'." Comm'n Decision, App. 29. Indeed, the Commission distinguished between the church itself and Tony Alamo's exploitation of the church and its members in furtherance of the criminal conduct for which he was convicted, holding that "[a]lthough the religious organization [Tony Alamo] headed was clearly genuine, and provided a real benefit to the community," its decision was warranted "because of [Tony Alamo's] corrupt conduct in the exploitation (financial, personal, and sexual) of [his] religious followers, and [his] sophisticated effort to use this religious organization as a cover to defraud the IRS." *Id.*

Not only does the challenged decision appear to lack any stigmatizing content on its face, but the church has failed to show that any stigma which might be read into the Commission's decision would actually have any detrimental consequences for Alamo Church. Purely speculative or conclusory assertions of the consequences of the alleged stigma do not satisfy the Supreme Court's requirement for specific, concrete facts demonstrating a particularized injury. *See Block v. Meese*, 793 F.2d 1303, 1308 (D.C.Cir.1986) (citing *Warth v. Seldin*, 422 U.S. at 508, 95 S.Ct. at 2210).

In addition, the Supreme Court has made clear that reputational injury "accords a basis for standing only to those persons who are personally denied equal treatment by the challenged discriminatory conduct." *Allen v. Wright*, 468 U.S. at 755–56, 104 S.Ct. at 3326–27 (internal quotes and citation omitted). Under this rule, only Tony Alamo, whom Appellants argue was denied parole due to the Commission's allegedly discriminatory decision, could assert reputational injury as a basis for standing. Alamo Church's suggestion that any stigmatization of Tony Alamo's relationship to his church also stigmatizes the church itself and all of its members by virtue of their relationship or common membership in the same group does not provide the church with a basis for standing to challenge the Commission's purportedly discriminatory treatment of Tony Alamo. "If [such an] abstract stigmatic injury were cognizable, standing would extend" beyond all reasonable limits. *Id.* at 755–56, 104 S.Ct. at 3327.

### III. CONCLUSION

For the reasons explained above, the District Court's decision dismissing the complaint is

*Affirmed.*