**Ruth Ann GUINAN, Plaintiff,**

v.

**ROMAN CATHOLIC ARCHDIOCESE OF INDIANAPOLIS, Defendant.**

**No. IP 98–16 C-B/S.**

United States District Court, S.D. Indiana, Indianapolis Division.

Dec. 11, 1998.

Irving L. Fink, Yosha Ladendorf Todd Krahulik & Weddle, Indianapolis, Indiana, for plaintiff.

John S. Mercer, William J. Wood, Wood Tuohy Gleason Mercer & Herrin, Indianapolis, Indiana, for defendant.

*ENTRY GRANTING IN PART AND DE-NYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDG-MENT*

BARKER, Chief Judge.

This matter comes before the Court on Defendant, Roman Catholic Archdiocese of Indianapolis' (Archdiocese), motion for summary judgment on Plaintiff, Ruth Ann Guinan's (Guinan), claims that the Archdiocese violated the Age Discrimination in Employment Act (ADEA) and her contractual rights under Indiana law by failing to renew her teaching contract. After due consideration and for the reasons explained below, we must *DENY* Defendant's motion as to Plaintiff's ADEA claim and *GRANT* Defendant's motion as to Plaintiff's state law contract claim.[1]

## I. BACKGROUND

The material facts are undisputed. Guinan, a practicing Catholic, was employed for eleven years by the Archdiocese as a fifth grade elementary school teacher at All Saints Elementary School (All Saints) in Indianapolis. Guinan's employment came to an end in 1996, when the Archdiocese opted not to renew her teaching contract. At the time, Guinan was 52 years old.

A primary objective of the Archdiocese and All Saints was and is the religious education and spiritual development of its students. Accordingly, Guinan not only taught secular courses, such as mathematics, social studies, science, art, computers, and language arts (reading, spelling, English and writing), but also taught a class in religion. At times, Guinan taught more than one religion class because the non-Catholic teachers were not permitted to teach religion, only a "Catechist" was permitted to teach it.[2] Indeed, Guinan perceived one of her principle duties to be "an example of Christianity" and an "evangelist" to her students.

While at All Saints, Guinan organized the Mass[3] once a month by selecting the

---

1. Defendant labels the motion as a motion to dismiss and/or summary judgment. Since both parties have submitted materials outside the pleadings, e.g. deposition and affidavit testimony, Defendant's motion is properly considered a motion for summary judgment. *See* Fed.R.Civ.P. 12(b); *Venture Associates Corp. v. Zenith Data Systems Corp.*, 987 F.2d 429, 431 (7th Cir.1993) (Rule 12(b) is mandatory, so that if materials outside pleadings are before the court and not excluded, the court must convert a 12(b) motion to one for summary judgment).

2. A "Catechist" is defined broadly as a teacher of Christianity. *See generally* Bishop Howard J. Hubbard, *I Am Bread Broken: A Spirituality of the Catechist* (Crossroads, 1996). While teaching at All Saints, Guinan was a "Catechist" by virtue of having attended a Catholic college and having taken eighteen hours of theology. (Guinan Aff. ¶ 6.)

3. Mass is a Catholic worship service which includes a sequence of prayers and ceremonies constituting a commemorative sacrifice of the body and blood of Christ under the appearances of bread and wine. Although Guinan assisted with the Mass, only priests are authorized to preside over the service. (Guinan Aff. ¶ 6.)

music and assigning different students to read passages from the Bible. She also instituted a program called "Images of God," which she taught for five years to students in grades five through eight. (Guinan Aff. ¶ 7.) The program "was basically a sex-education program for human growth and development" and Guinan was asked to teach it because "some of the other teachers were not comfortable dealing with the subject matter." (*Id.*) Apart from the program's title, there is no indication that it was necessarily religiously oriented. In fact, Guinan's description, which is the only description before us, makes it seem as if the program were no different than a sex education program in any public school. (*Id.*)

## II. *SUMMARY JUDGMENT STANDARDS*

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.Pro. 56(c). A genuine issue of material fact exists if there is sufficient evidence for a jury to return a verdict in favor of the non-moving party on the particular issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Methodist Med. Ctr. v. American Med. Sec., Inc.*, 38 F.3d 316, 319 (7th Cir.1994).

In resolving a motion for summary judgment, a court must draw all reasonable inferences in the light most favorable to the non-movants. *Patel v. Allstate Ins. Co.*, 105 F.3d 365, 366 (7th Cir.1997); *Spraying Sys. Co. v. Delavan, Inc.*, 975 F.2d 387, 392 (7th Cir.1992). However, we must not "ignore facts in the record merely because they are unfavorable.... [A non-movant] gets the benefit of the doubt only if the

record contains competent evidence on both sides of a factual question." *Patel*, 105 F.3d at 366. Thus, if genuine doubts remain, and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. *Shields Enters., Inc. v. First Chicago Corp.*, 975 F.2d 1290, 1294 (7th Cir.1992); *Wolf v. City of Fitchburg*, 870 F.2d 1327, 1330 (7th Cir.1989).

## III. *DISCUSSION*

Defendant moves for summary judgment on Plaintiff's ADEA and breach of contract claims. Plaintiff does not dispute Defendant's arguments regarding the breach of contract claim, conceding that it should be dismissed.[4] The ADEA claim, however, is hotly contested by both parties. Defendant contends that Plaintiff's ADEA claim should be dismissed because (1) the ADEA, by its terms, does not apply to religious institutions, (2) the "ministerial exception" bars the ADEA's application, and (2) the Religious Freedom Restoration Act of 1993, 42 U.S.C. § 2000bb – 2000bb–4 (RFRA), bars the ADEA's application. Plaintiff rejoins that (1) the ADEA applies to religious institutions, (2) the "ministerial exception" does not apply here, and (3) the RFRA is unconstitutional.

The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age...." 29 U.S.C. § 623(a)(1). While, as a general matter, the ADEA applies to religious institutions, *see DeMarco v. Holy Cross High School*, 4 F.3d 166, 172 (2nd Cir. 1993), the courts have recognized that in some cases its application to employees of such institutions conflicts with First Amendment principles. Accordingly, the

4. *See* Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment at 2. Plaintiff is to be commended for wisely conceding that her breach of contract claim should be dismissed. Instead of requiring an expenditure of valuable resources on a claim destined to fail, Plaintiff insightfully acknowledges the claim's deficiency and concentrates on her ADEA claim.

so-called "ministerial exception" has emerged, which prohibits the application of the ADEA and other employment discrimination laws to ministers and other clergy members. See *Young v. Northern Illinois Conference of United Methodist Church*, 21 F.3d 184, 186 (7th Cir.1994). "As a general rule, if the employee's primary duties consist of teaching, spreading the faith, church governance, supervision of a religious order, or supervision or participation in religious ritual and worship, he or she should be considered clergy" for purposes of the exception. *Rayburn v. General Conference of Seventh–day Adventists*, 772 F.2d 1164, 1169 (4th Cir. 1985); *see also McClure v. Salvation Army*, 460 F.2d 553 (5th Cir.1972) (first case to recognize the ministerial exception). The applicability of the ministerial exception is a question of law for the court. *See EEOC v. Southwestern Baptist*, 651 F.2d 277, 285 (5th Cir.1981); *Starkman v. Evans*, 18 F.Supp.2d 630, 631 (E.D.La.1998).

The Seventh Circuit applied the ministerial exception in *Young v. Northern Illinois Conference of United Methodist Church*, 21 F.3d 184 (7th Cir.1994). In that case, an African–American woman who served as a probationary minister for the church brought a Title VII action against the church, alleging that she was stripped of her ministerial status and denied a promotion to the position of "elder" because of her race and sex. The Seventh Circuit acknowledged the validity of the ministerial exception and its extension to those employees whose position is "important to the spiritual and pastoral mission of

the church." *Id.* at 186 (*quoting Rayburn*, 772 F.2d at 1168). The court went on to hold that the ministerial exception clearly applied in that case and, thus, the ADEA claim was properly dismissed by the district court.[5]

Unlike *Young*, the instant case does not allow for such a straightforward resolution. Guinan was not an ordained minister, the vast majority of the classes she taught regarded secular subjects, and she did not lead in religious worship services. Conversely, however, she was a Catechist, taught at least one class in religion per term, and organized Mass once a month.[6] Hence, Guinan's duties included some religious activities, which distinguishes her from a church maintenance person, for example, who probably would not fall within the ministerial exception, since the duties for that position are likely to be exclusively secular. *See Southwestern Baptist*, 651 F.2d at 284 (exception not applied to maintenance workers at seminary who were also training to be ministers); *Lukaszewski v. Nazareth Hospital*, 764 F.Supp. 57 (E.D.Pa.1991) (exception not applied to director of plant operations at religious hospital); *Stouch v. Brothers of the Order of Hermits of St. Augustine*, 836 F.Supp. 1134 (E.D.Pa.1993) (exception not applied to church chef).

■ Guinan did participate in some religious activities as a teacher at All Saints, but it cannot be fairly said that she functioned as a minister or a member of the clergy. The vast majority of Guinan's duties involved her teaching secular courses, such as math or science. Indeed, the secular nature of her position is under-

---

**5.** The Eastern District of Wisconsin in *Maguire v. Marquette University*, 627 F.Supp. 1499 (E.D.Wis.1986), *aff'd*, 814 F.2d 1213 (7th Cir.1987), dismissed an associate professor of theology's Title VII claim against a religious university by applying the ministerial exception. On appeal, the Seventh Circuit declined to address whether the ministerial exception applied. Instead, it affirmed the dismissal on the grounds that the plaintiff failed to establish that the university's stated reason for its action was pretext. Unlike *Maguire*, the summary judgment motion before

us does not allege any grounds for dismissal other than the inapplicability of the ADEA.

**6.** The fact that Guinan perceived one of her principle duties to be "an example of Christianity" does not evidence that the ministerial exception should apply. *See Southwestern Baptist*, 651 F.2d at 283 ("[t]hat faculty members are expected to serve as exemplars of practicing Christians does not serve to make the terms and conditions of their employment matters of church administration and thus purely of ecclesiastical concern.").

scored by the fact that the Archdiocese did not require teachers at All Saints to be Catholic and, as a matter of fact, some were not Catholic. Moreover, the application of the ministerial exception to non-ministers has been reserved generally for those positions that are, at the very least, close to being exclusively religious based, such as a chaplain or a pastor's assistant. *See Scharon v. St. Luke's Episcopal Presbyterian Hospitals,* 929 F.2d 360 (8th Cir. 1991) (chaplain); *Rayburn v. General Conference of Seventh-day Adventists,* 772 F.2d 1164 (4th Cir.1985) (pastor's assistant). This clearly is not the situation here. Accordingly, we find the ministerial exception inapplicable to this case.

*DeMarco v. Holy Cross High School,* 4 F.3d 166 (2nd Cir.1993), is consistent with our conclusion. In *DeMarco,* the Second Circuit addressed whether DeMarco, a mathematics teacher at a Catholic high school, could bring an ADEA claim against the school after the school opted not to renew his teaching contract. Although a lay person, DeMarco had certain religious duties as a teacher at Holy Cross, including leading his students in prayer and taking them to Mass. Reversing the district court's dismissal of DeMarco's claim, the Second Circuit held that the ADEA applied, distinguishing cases applying the ministerial exception as "inapposite, since each one deals with the pervasively religious relationship between a member of the clergy and his religious employer." *Id.* at 171; *see also Geary v. Visitation of the Blessed Virgin Mary Parish School,* 7 F.3d 324 (3rd Cir.1993) (exception did not apply to lay teacher at church-operated elementary school); *Grotke v. Canisius High School,* No. 90–CV–1057S, 1992 WL 535400 (W.D.N.Y. April 11, 1992) (exception not applied to Latin teacher at Catholic high school); *Nigrelli v. Catholic Bishop of Chicago,* No. 84–C–5564, 1991 WL 36712 (N.D.Ill. March 14, 1991) (exception not applied to principal and theology teacher at Catholic high school).[7]

Defendant cites *EEOC v. Catholic University of America,* 83 F.3d 455 (D.C.Cir. 1996) and *Powell v. Stafford,* 859 F.Supp. 1343 (D.Colorado 1994), in support of its position that the ministerial exception should apply. Unlike the instant case, however, neither *Catholic University* nor *Powell* involved a teacher in a religious school whose duties were primarily secular. *Catholic University* involved a Catholic nun who was denied tenure for a faculty position teaching canons of the church. This position was almost entirely religious based and her status as a nun necessarily made her a spiritual leader within the Catholic church. Further, *Powell* involved a teacher at a religious school whose duties were "exclusively religious." *Id.* at 1347.

Rejecting the ministerial exception is judicial shorthand for holding that Defendant's First Amendment rights are not burdened by the application of the ADEA. *See EEOC v. Catholic University,* 83 F.3d 455, 467 (D.C.Cir.1996). Accordingly, our conclusion regarding the ministerial exception necessarily disposes of Defendant's claim that the ADEA's application violates the Religious Freedom Restoration Act by substantially burdening religious exercise.[8]

---

7. The Second Circuit held that any First Amendment problems are averted by requiring that "ADEA plaintiffs [ ] not challenge the plausibility of putative religious purposes. A fact-finder will necessarily have to presume that an asserted religious motive is plausible in the sense that it is reasonably or validly held." *DeMarco* at 171.

8. Our discussion assumes that the RFRA remains constitutional as applied to federal law, which is far from clear. The Supreme Court in *City of Boerne v. Flores,* 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997), held the RFRA's application to state law unconstitutional, but the constitutionality of the RFRA as applied to federal laws has not yet been clarified, either by the Supreme Court or within the Seventh Circuit. While the trend seems to be to limit *Boerne* to its holding, it remains a fairly open question. *See, e.g., Alamo v. Clay,* 137 F.3d 1366, 1998 WL 112842, *2 (D.C.Cir.1998) (assuming without deciding RFRA is constitutional as applied to federal law); *In re Young,* 141 F.3d 854, 854 (8th Cir.1998) (holding RFRA constitutional as applied to federal law); *U.S. v. Grant,* 117 F.3d 788, 792 n. 6 (5th Cir.1997) (noting *Boerne*

852 854

## IV. CONCLUSION

Accordingly, Defendant's motion for summary judgment is *DENIED* as to Plaintiff's ADEA claim because (1) the ADEA applies to religious institutions, (2) the ministerial exception does not apply in this case, and (3) the RFRA does not bar the ADEA's application in this case. Defendant's motion for summary judgment is *GRANTED* as to Plaintiff's state law contract claim because Plaintiff concedes as much.

"arguably casts some doubt on the continued viability of RFRA" while declining to address