**MACEDONIA CHURCH, et al., Plaintiffs,**

v.

**LANCASTER HOTEL LIMITED PARTNERSHIP, Masspa Realty Corporation, and Fine Hotels Corp., Defendants.**

**Civil No. 3:05CV00153(AWT).**

United States District Court, D. Connecticut.

Aug. 1, 2007.

David M. Cohen, Eric M. Higgins, Mary–Kate Smith, Wofsey, Rosen, Kweskin & Kuriansky, Stamford, CT, for Plaintiffs.

Gerald L. Maatman, Jr., Michael A. Cox, Seyfarth, Shaw, Chicago, IL, Katherine E. Perrelli, Seyfarth Shaw, Boston, MA, for Defendants.

## RULING ON MOTION TO DISMISS

THOMPSON, District Judge.

The defendants have moved to dismiss the amended complaint as to all but four of the plaintiffs pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction on the grounds that the remaining plaintiffs lack standing. For the reasons set forth below, the defendants' motion to dismiss is being granted in part and denied in part.

## I. BACKGROUND

This action arises out of an effort by a group of individuals associated with Macedonia Church, a predominantly African–American congregation, to reserve lodging at the Lancaster Host Resort and Conference Center in Lancaster, Pennsylvania. The complaint alleges that the defendants, Lancaster Hotel Limited Partnership, MASSPA Realty Corporation, and Fine Hotels Corp. denied the group accommodations because of their race, in violation of 42 U.S.C. §§ 1981 and 2000a. The plaintiffs seek monetary damages, as well as an injunction restraining the defendants from denying the plaintiffs and any others similarly situated the use and enjoyment of any public accommodation in the defendants' possession.

## II. LEGAL STANDARD

■ In ruling on a motion to dismiss for lack of standing, the court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party. At the same time, it is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing." *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) (citation omitted).

## III. DISCUSSION

■ "In essence, the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues. Standing doctrine embraces several judicially self-imposed limits on the exercise of federal jurisdiction ... [and includes] a core component derived directly from the Constitution." *Allen v. Wright,* 468 U.S. 737, 750–

751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984) (citation omitted).

## A. *Individual Plaintiffs—Constitutional Standing*

In order to satisfy the core constitutional component of Article III, a plaintiff must show:

> (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of Earth, Inc. v. Laidlaw Env't Serv. (TOC), Inc.,* 528 U.S. 167, 180–181, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000).

The defendants argue that, with the exception of the four individual plaintiffs who visited the Lancaster Host Resort and Convention Center (the "Organizers"), the remaining individual plaintiffs (the "Non-organizer Plaintiffs")[1] fail to satisfy the first of these requirements because the alleged injuries are stigmatic and thus insufficient to confer standing, and fail to satisfy the second requirement because there is no causal connection between the defendants' actions and the Non-organizer plaintiffs' stigmatic injuries.

### 1. Injury-in-fact

■ While stigmatic injury by itself is an insufficient basis for standing, it may provide a basis for standing to "those persons who are personally denied equal treatment by the challenged discriminatory conduct." *Allen,* 468 U.S. at 756, 104 S.Ct. 3315. Here, the plaintiffs allege that they suffered more than just generalized stigmatic injuries. The complaint alleges, with respect to the First Count, that the plaintiffs "were denied accommodations at Lancaster Host and were refused the right to contract for rooms at Lancaster Host on the basis of race and color," Am. Compl. ¶ 47, and, with respect to the Second Count, that they were denied their "right to be free of discrimination in public accommodations." Am. Compl. ¶ 58.

The defendants argue that because the "Plaintiffs (except the Organizers) fail to allege any contact or other involvement whatsoever with respect to Defendants' alleged denial of reservations ... [they] have not suffered any injury that affected them 'in a personal and individual way.'" Defs. Mem. Supp. Mot. Dismiss (Doc. No. 100), at 6. The defendants' argument appears to assume that unless each plaintiff had firsthand contact with the defendants, he or she could not suffered any "personal and individual" injury.

■ Whether there was first-hand contact between the individual plaintiffs and the defendants is not material to the question of whether the individual plaintiffs suffered a personal and individual injury. Each of the Non-organizer Plaintiffs alleges that he or she was denied accommodations on the basis of race or color. The fact that the defendants informed the plaintiffs of their refusal to provide them with accommodations by communicating with the Organizers instead of with each of the Non-organizer plaintiffs does not alter the fact that those plaintiffs were denied accommodations. Nor is it material that the plaintiffs were unaware of the discrimination until some time after it occurred. "For purposes of standing, however, it is the exclusion itself that is of critical importance, since exclusion alone would violate

---

1. As used in this ruling, "Non-organizer plaintiffs" refers only to the individual plaintiffs and does not include Macedonia Church, which is discussed separately, *infra.*

**498**

the asserted rights quite apart from any objective or subjective disadvantage that may flow from it." *Warth,* 422 U.S. at 504 n. 13, 95 S.Ct. 2197 (1975).[2]

The defendants cite *McClain v. American Economy Ins. Co.,* 424 F.3d 728, 733 (8th Cir.2005) in support of their contention that "plaintiffs lack standing because they did not have the direct contact needed to establish a direct injury." The court in *McClain,* however, employed the term "direct contact" broadly and held open the possibility that knowledge of a defendant's discriminatory policies that deterred a plaintiff from applying for services from that defendant could alone constitute "direct contact with the defendants." *Id.* Unlike *McClain,* the plaintiffs in this case are not simply alleging that they would have applied for services but for their knowledge of the defendants' discriminatory policies; they are alleging that they did apply for services and were denied those services because of race.

The defendants' reliance on *Alamo v. Clay,* 137 F.3d 1366 (D.C.Cir.1998) is also misplaced. The court in that case concluded that not only had the plaintiffs failed to show any stigma, but they had also failed to show any detrimental consequences as a result of the alleged stigma. *Id.* at 1370. Here, in contrast, the plaintiffs allege the actual denial of accommodations.

### 2. Causation

The defendants also argue that they did not cause the alleged injury to the Non-organizer plaintiffs because they did not communicate directly with them. The defendants' argument on causation, like their argument with respect to the injury-in-fact element, assumes that the plaintiffs only suffered a generalized stigmatic injury. As discussed above, what the plaintiffs actually allege is that they were denied the right to contract and to be free of discrimination in public accommodations. The defendants do not dispute that there is an allegation that they were responsible for the denial of accommodations to the plaintiffs. Accordingly, the defendants' argument with respect to causation is unavailing.

### B. *Individual Plaintiffs—Prudential Standing*

■ The defendants also challenge the Non-organizer plaintiffs' standing on prudential grounds. "Essentially, the standing question in such cases is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Warth,* 422 U.S. at 500, 95 S.Ct. 2197.

■ The defendants cite *Domino's Pizza, Inc. v. McDonald,* 546 U.S. 470, 126 S.Ct. 1246, 1252, 163 L.Ed.2d 1069 (2006) for the proposition that "Section 1981 plaintiffs must identify injuries flowing from a racially motivated breach of their own contractual relationship, not of someone else's." In *McDonald,* the Court held that "Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship, so long as the plaintiff has or would have rights under the existing or proposed contractual relationship." *Id.* at 1250. The defendants' argument assumes that the Non-organizer plaintiffs would not have had any rights under the

---

**2.** The court notes that the fact that some of the plaintiffs are Caucasian does not preclude them from bringing a claim under 42 U.S.C. § 1981 based on discrimination that they suf- fered as a result of their association with African Americans. *See DeMatteis v. Eastman Kodak Co.,* 511 F.2d 306, 312 (2d Cir.1975).

proposed contractual relationship between the defendants and the plaintiffs for provision of accommodations. However, the identity of the proposed parties to the contract between the plaintiffs and the defendants is not apparent from the record. Drawing all inferences in favor of the plaintiff, as is required at the motion to dismiss stage, the court cannot conclude that the individual plaintiffs would not have had any rights under the proposed contract.

## C. *Standing of Macedonia Church*

The defendants contend that plaintiff Macedonia Church lacks either general or associational standing to bring its claims.

### 1. General Standing

▆ The defendants do not contest that Macedonia Church would have standing to seek redress for its own injuries, but they argue that the church has not alleged any such personal injury. The wrongful conduct alleged in the complaint is discrimination in the making of contracts and in the provision of public accommodations. To the extent that the discrimination in the making of contracts injured the individual plaintiffs and members of the class, it is not apparent how it also injured Macedonia Church, since presumably only the individual plaintiffs or Macedonia Church would have been parties to the contract, and not both. For the same reason, it is not apparent how both Macedonia Church and the individual plaintiffs could have suffered discrimination in the provision of public accommodations. Accordingly, the defendants' motion to dismiss is being granted with respect to the claims brought by Macedonia Church on its own behalf, without prejudice to the filing of an amended complaint identifying the injuries personally suffered by Macedonia Church, and if applicable, alleging how injuries were suffered by both Macedonia Church and the individual members of the class.

### 2. Associational Standing

▆ The plaintiff in this case argues that even it has not suffered an injury-in-fact, it can maintain suit on behalf of its members pursuant to the doctrine of associational standing. Under that doctrine, an association may "sue to redress its members' injuries, even without a showing of injury to the association itself." *United Food & Com. Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 552, 116 S.Ct. 1529, 134 L.Ed.2d 758 (1996).

▆ The test for associational standing has three prongs: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Id.* at 553, 116 S.Ct. 1529 (quoting *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977)). The Supreme Court has explained that the first two factors of the *Hunt* test are required by the Constitution and the third prong is a "judicially self imposed limit[ ] on the exercise of federal jurisdiction ... that Congress may remove by statute." *Brown Group*, 517 U.S. at 551, 558, 116 S.Ct. 1529 (citations omitted).

The defendants argue that the plaintiff lacks associational standing because the plaintiff does not satisfy the second and third prongs of the *Hunt* test, i.e., the interests that Macedonia Church seeks to protect are not germane to its purpose, and the nature of the claim or the relief sought necessitates the participation of the individual members for proper resolution of the suit.

#### a. The "Germaneness" Requirement

The Second Circuit recently addressed the "germaneness" requirement of *Hunt* in *Building and Const. Trades v. Downtown Dev., Inc.*, 448 F.3d 138 (2d Cir.2006). There, the court quoted approvingly from *Humane Society of the United States v. Hodel*, 840 F.2d 45 (D.C.Cir.1988):

> [T]he 'germaneness' requirement of *Hunt*, as seen through the lens of the language of UAQ, 'would seem to require only that an organization's litigation goals be pertinent to its special expertise and the grounds that bring its membership together.' *Hodel*, 840 F.2d at 56; accord *Nat'l Lime Ass'n v. Envtl. Prot. Agency*, 233 F.3d 625, 636–37 (D.C.Cir.2000). In sum, the 'requirement of germaneness is undemanding; mere pertinence between litigation subject and organizational purpose is sufficient.' *Nat'l Lime Ass'n*, 233 F.3d at 636 (quoting *Hodel*, 840 F.2d at 58).

*Building and Const. Trades*, 448 F.3d at 148. The Second Circuit concluded that, with respect to the germaneness inquiry,

> The proper inquiry at the pleading stage is thus a limited one: A court must determine whether an association's lawsuit would, if successful, reasonably tend to further the general interests that individual members sought to vindicate in joining the association and whether the lawsuit bears a reasonable connection to the association's knowledge and experience.

*Id.* at 149.

The defendants contend that the purpose of Macedonia Church is "completely unrelated to correcting alleged civil rights violations." Defs. Mem. Supp. Mot. Dismiss, at 12. Macedonia Church, for its part, maintains that it is "vitally concerned with the issues of civil rights and racial discrimination," Pls. Mem. Opp. Mot. Dismiss (Doc. No. 121), at 22, and its pastor attests that "civil rights and racial justice also are focal points of my ministry." Affidavit of Reverend DeWitt Stevens Jr., in plaintiffs' first Mem. Opp. Mot. to Dismiss (Doc. No. 22), ¶ 7. In particular, Reverend Stevens states:

> I consider the Reverend Dr. Martin Luther King Jr. to be my primary theological and intellectual role model, and I believe that I and Macedonia Church are called to carry forth Dr. King's legacy of Christian response to issues of racial injustice, poverty and violence. I preach on these topics regularly, and frequently quote Dr. King in my sermons.

> . . . . .

> 9. Macedonia Church has a special relationship with the Noroton Presbyterian Church, a predominantly white church located in Darien. Macedonia Church has historically held joint worship services with Noroton Presbyterian Church as well as a Friday morning prayer service at Noroton Presbyterian that I led. In addition, members from Macedonia Church and Noroton Presbyterian Church join together for an annual weekend men's retreat, as well as biweekly Bible study. To my knowledge, this relationship is unusual because of the differing demographics of our respective congregations. Macedonia Church is committed to working to continue to strengthen this relationship, because we mourn the fact that America is never more segregated than on Sunday morning, and we are committed to working toward changing these circumstances and building bridges to our white Christian neighbors.

> 10. Macedonia Church is prominent in the annual Martin Luther King Day observances in Norwalk. We frequently participate in commemorative marches

with other churches. A contingent of members from Macedonia Church always attends these observances. This year, Reverend Albert Ray Dancy was among the featured speakers at an ecumenical worship service held in memory of Dr. King.

Stevens Aff. ¶¶ 7, 9 and 10.

Neither the defendants nor the plaintiffs squarely address the standard for "germaneness" set forth in *Building and Const. Trades,* which was decided after the defendants' motion to dismiss was filed. Accordingly, the motion to dismiss Macedonia Church's claims on this ground is being denied without prejudice.

### b. The Necessity of Individual Plaintiffs' Participation

The defendants also argue that Macedonia Church does not have associational standing because the plaintiffs seek compensatory damages, which requires individualized proof with respect to each of the injured members. The defendants' position is consistent with the Supreme Court's holding in *Warth:*

> Whether an association has standing to invoke the court's remedial powers on behalf of its members depends in substantial measure on the nature of the relief sought. If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured. Indeed, in all cases in which we have expressly recognized standing in associations to represent their members, the relief sought has been of this kind.
>
> The present case, however, differs significantly as here an association seeks relief in damages for alleged injuries to its members. [The plaintiff association] alleges no monetary injury to itself, nor any assignment of the damages claims of its members. No award can therefore be made to the association as such. Moreover, in the circumstances of this case, the damages claims are not common to the entire membership, nor shared by all in equal degree. To the contrary, whatever injury may have been suffered is peculiar to the individual member concerned, and both the fact and extent of injury would require individualized proof. Thus, to obtain relief in damages, each member of [the plaintiff association] who claims injury as a result of the respondents' practices must be a party to the suit, and [the plaintiff association] has no standing to claim damages on his behalf.

*Warth,* 422 U.S. at 515–516, 95 S.Ct. 2197 (citations omitted).

 "A plaintiff must demonstrate standing separately for each form of relief sought." *Laidlaw,* 528 U.S. at 185, 120 S.Ct. 693. In this case, Macedonia Church does not contend that it has standing to bring claims for compensatory damages on behalf of its members; rather it only argues that it has associational standing because it seeks a permanent injunction, which would benefit all of the members on whose behalf the church is seeking relief. *See* Pls. Opp. Mot. Dismiss, at 23. But it is not apparent that Macedonia Church could seek equitable relief on behalf of the Non-organizer plaintiffs who are not members of the church; this specific issue was not addressed by the parties.

Accordingly, the motion to dismiss is being granted as to Macedonia Church with respect to any claims for compensatory damages on behalf of its members, and denied without prejudice with respect to its claims for equitable relief.

## IV. CONCLUSION

For the reasons set forth above, the defendants' Motion to Dismiss (Doc. No. 99) is hereby DENIED as to the Non-organizer Plaintiffs; GRANTED in part as to Macedonia Church with respect to any claims asserted on its own behalf, without prejudice to the filing an amended complaint; and GRANTED in part and DENIED without prejudice in part as to Macedonia Church with respect to its claims for equitable relief.

It is so ordered.