**BRANCH MINISTERIES,
INC., et al., Plaintiffs**

v.

**Margaret M. RICHARDSON, Defendant.**

**Civil Action No. 95–0724(PLF).**

United States District Court,
District of Columbia.

July 3, 1997.

Mark Nathan Troobnick, Colby Mims May, Washington, DC, for Plaintiffs.

Donald J. Gavin, U.S. Dept. of Justice, Washington, DC, for Defendant.

## OPINION

PAUL L. FRIEDMAN, District Judge.

This case is before the Court on Defendant's Motion for Summary Judgment or to Dismiss, Defendant's Motion for a Protective Order, Plaintiffs' Motion to Compel and Plaintiffs' Motion to Amend Exhibits Attached to Opposition to Motion for Protective Order. In response to the Court's order, the parties also submitted supplemental briefs on the relevance of the Supreme Court's decision in *United States v. Armstrong*, —— U.S. ——, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996), which was handed down after argument had already been heard on the motions in this case.

Defendant seeks a protective order against all of plaintiffs' requested discovery in this action, at least until after the Court has ruled

on defendant's motion for summary judgment. Plaintiffs, in turn, have moved to compel defendant's responses to their discovery requests. For the reasons articulated below, the Court finds that plaintiffs are entitled to limited discovery in this matter, including some discovery with respect to their claims of selective enforcement. In addition, the Court will grant plaintiffs' motion to amend their exhibits and will defer ruling on defendant's motion for summary judgment until the additional discovery authorized by this Opinion has been completed.

## I. BACKGROUND

Plaintiffs are Branch Ministries, Inc. ("BMI"), doing business as the Church at Pierce Creek, and Pastor Dan Little who is the pastor of the Church at Pierce Creek. On October 30, 1992, four days before the presidential election, BMI bought advertising space in two newspapers—*The Washington Times* and *USA Today*—to print an open letter. The letter, which was headed "Christian Beware," described then–Governor Clinton as supporting abortion on demand, homosexuality and the distribution of condoms to teenagers in the public schools. The letter cited various Biblical passages and concluded with the statement: "How then can we vote for Bill Clinton?" The letter concluded in fine print: "Tax–deductible contributions for this advertisement gladly accepted" and requested that donations be made to The Church at Pierce Creek.

On January 19, 1995, the IRS revoked BMI's tax exempt status under 26 U.S.C. § 501(c)(3), retroactive to January 1, 1992. Plaintiffs assert that the revocation violates the Internal Revenue Code, the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb, the First Amendment and the church's equal protection rights under the Fifth Amendment.[1] Plaintiffs request declaratory and injunctive relief.

## II. PLAINTIFFS' MOTION TO AMEND

Several months after argument was heard on defendant's motion for a protective order, plaintiffs filed a motion seeking to amend the exhibits to their opposition. The new exhibits contain discovery materials from another case in which the IRS provided limited responses to questions about IRS investigations of television ministries. Defendant rightly points out that the fact that the IRS may have responded to discovery in another case is not dispositive of the legal question of whether plaintiffs in this case are entitled to the information they seek. Nevertheless, the IRS's discovery practices and responses are relevant here, especially since the application of IRS confidentiality policies are at issue in this case. Accordingly, plaintiffs' exhibits will be accepted for filing and the Court will consider them for whatever they may be worth.

## III. DEFENDANT'S MOTION FOR A PROTECTIVE ORDER AND PLAINTIFFS' MOTION TO COMPEL

In connection with their claim of selective prosecution plaintiffs seek discovery in three areas: (1) the IRS's investigation of the Church at Pierce Creek; (2) all IRS investigations and lawsuits against other churches or religious organizations for violations of the campaign ban that have resulted in the revocation of tax exempt status or a fine; and (3) the IRS's interpretations of the Internal Revenue Code and the standards used to determine whether a church has violated the campaign ban.

■■■] Generally speaking, a plaintiff is entitled to all "discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action.... The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Rule 26(b), FED.R.CIV.P. In selective prosecution cases, however, a higher threshold must be met before the government will be required to provide discovery. In addition, the IRS argues that the information sought is privileged either because it is third–party tax return information under I.R.C. § 6103

---

**1.** Since the filing of the complaint, the Supreme Court has declared RFRA to be unconstitutional. *See City of Boerne v. Flores,* — U.S. —, 117 S.Ct. 2157, — L.Ed.2d — (1997).

or because it invades the protected internal deliberative processes of the agency.

### A. Information Pertaining to the Investigation of BMI

] Plaintiffs' Discovery Request Nos. 2, 7–10, and 21 (and subparts) seek information pertaining to the IRS's decision to revoke BMI's tax exempt status. Plaintiffs argue that the information pertains to BMI's own tax returns and return information and that they therefore are entitled to it under I.R.C. § 6103(e). The IRS responds that the decision to release such information is discretionary with the Secretary of the Treasury and that such information is affirmatively protected because it would reveal the IRS's deliberative processes. See NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 149–50, 95 S.Ct. 1504, 1515–16, 44 L.Ed.2d 29 (1975); Army Times Publishing Co. v. Dep't of the Air Force, 998 F.2d 1067, 1070–71 (D.C.Cir.1993); Quarles v. Dep't of the Navy, 893 F.2d 390, 392 (D.C.Cir.1990); Dudman Communications Corp. v. Dep't of Air Force, 815 F.2d 1565, 1567 (D.C.Cir.1987).

Section 6103(a) of the Internal Revenue Code renders all returns and return information confidential with certain specified exceptions. Section 6103(c) is one such exception; it permits disclosure of a taxpayer's own return and return information to that person or a designee. That exception states:

> The Secretary may, subject to such requirements and conditions as he may prescribe by regulations, disclose the return of any taxpayer, or return information with respect to such taxpayer, to such person or

persons as the taxpayer may designate in a written request for or consent to such disclosure.... However, return information shall not be disclosed to such person or persons if the Secretary determines that such disclosure would seriously impair Federal tax administration.

26 U.S.C. § 6103(c).[2] Nothing in the record indicates that the Secretary has determined that providing Branch Ministries with its own return information "would seriously impair Federal tax administration," or even that the Secretary has exercised his discretion in any way to decide whether BMI may obtain its own return information. Since Section 6103(c) expressly lifts the confidentiality provisions of section 6103(a) to permit disclosure, the government cannot rely on Section 6103(a) to avoid discovery of such material. In the absence of any finding from the Secretary whatsoever, BMI is entitled to its own return information.[3]

] The IRS argues that even if subsections 6103(c) or (e) apply to some or all of the information sought by plaintiffs, that information is further protected by the deliberative process privilege. The deliberative process privilege protects from disclosure inter–and intra–agency communications and documents generated before a final decision. See NLRB v. Sears, Roebuck & Co., 421 U.S. at 151–52, 95 S.Ct. at 1516–17 (distinguishing between pre–decisional and post–decisional communications); Dudman Communications Corp. v. Dep't of the Air Force, 815 F.2d at 1567. Generally speaking, the privilege does not protect "purely factual" data unless re-

---

2. 26 U.S.C. § 6103(b)(2) defines return information as:

> (A) a taxpayer's identity, the nature, source, or amount of his [sic] income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return of with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine forfeiture, or other imposition, or offense, and

> (B) any part of any written determination or any background file document relating to such written determination (as such terms are defined in section 6110(b)) which is not open to public inspection under section 6110.

3. Plaintiffs actually rely not on Section 6103(c) but Section 6103(e), which provides that tax returns "shall" be made available for individual inspection. See 26 U.S.C. § 6103(e)(1)(D)(ii). This section, however, provides only for the disclosure of returns and makes no reference to return information, and therefore does not authorize the disclosure of the kinds of return information sought by plaintiffs with respect to decisions made about their tax exempt status; only I.R.C. § 6103(c) does.

vealing that data would "expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency. . . . " *Quarles v. Dep't of the Navy*, 893 F.2d at 392; *see Army Times Publishing Co. v. Dep't of the Air Force*, 998 F.2d at 1071.

■■■ Return information includes "whether the taxpayer's return was, is being, or will be examined" and "any other *data*, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence . . . of liability. . . ." 26 U.S.C. § 6103(b)(2) (emphasis added). Return information does not include information about how the IRS reached its decisions, and the disclosure of BMI's own return information, including the bare fact of whether BMI was being investigated, will not reveal the IRS's internal discussions, reasoning, strategies or other deliberations. Plaintiffs therefore are entitled to any factual data collected by the IRS pertaining to Branch Ministries' potential liability, including data pertaining to whether an investigation was ongoing at any given time. *See Dudman Communications Corp. v. Dep't of the Air Force*, 815 F.2d at 1569 (in cases where purely factual information is sought, agency can extract factual information from documents that in their entirety would reveal deliberative processes).[4] Decisional documents regarding the revocation of BMI's tax exempt status that were generated after the revocation letter was issued on January 19, 1995, are not protected by the privilege at all and therefore shall be released in their entirety. If disputes remain about assertedly deliberative process information after disclosures are made, the Court will review disputed redactions and/or withheld documents in *camera*.[5]

**B. Selective Prosecution**

At the heart of this discovery dispute lies plaintiffs' contention that the IRS revoked BMI's tax exempt status while permitting other churches with different political leanings to engage in similar political activities without reprisal in violation of the Equal Protection Clause. Plaintiffs' Discovery Requests Nos. 3–6, 16–19, and 22–24 (and subparts) seek information pertaining to the IRS's investigations of other churches and religious organizations and whether any other church has had its tax exempt status revoked for violating the campaigning ban. The IRS's response is two-fold: first, it argues that plaintiffs have failed to make out the threshold requirements for discovery in a selective prosecution case, and second, it maintains that even if they have, the information is protected third–party return information under I.R.C. § 6103(a) that the IRS is not permitted to disclose.

**1. *The Threshold Requirements***

■■■ A plaintiff bringing a selective prosecution claim carries a heavy burden. Government enforcement actions are entitled to the presumption that they are carried out with regularity and in good faith. *See United States v. Armstrong*, — U.S. ——, ——, 116 S.Ct. 1480, 1486, 134 L.Ed.2d 687 (1996); *Attorney General v. Irish People, Inc.*, 684 F.2d 928, 947 (D.C.Cir.1982). The executive branch has broad discretion, particularly with respect to decisions whether or not to enforce a law or regulation against a particular person or entity. *See Heckler v. Chaney*, 470 U.S. 821, 831, 105 S.Ct. 1649, 1655–56, 84 L.Ed.2d 714 (1985). Selectivity alone does not render law enforcement unlawful, *see Oyler v. Boles*, 368 U.S. 448, 456, 82 S.Ct. 501, 505–06, 7 L.Ed.2d 446 (1962); selectivity is, after all, at the heart of the exercise of prosecutorial discretion. Rather, to be un-

---

**4.** Insofar as protected deliberative information is contained in documents that also contain BMI's return information, it may be redacted or withheld as appropriate.

**5.** Plaintiffs assert that the declarations of Peter Lorenzetti, Branch III Chief, Brooklyn District Office, and Theodore Leighton, Assistant District Counsel, New York District Office, submitted by defendant in support of her motion for summary judgment have put the deliberative processes of

the IRS at issue in this case and that the IRS therefore cannot now invoke the privilege. The Court, having carefully considered the declarations, rejects this argument. Mr. Lorenzetti's declaration identifies and vouches for the authenticity of various documents and Mr. Leighton's declaration describes two meetings between the IRS and BMI. Neither declaration describes or relies on any internal IRS deliberations regarding the revocation of BMI's tax exemption.

lawful the selectivity must be improperly motivated. Individuals are entitled to equal protection under the law and the government, even in its broad discretion, may not prosecute or otherwise enforce the law in an arbitrary fashion or based on race, religion, or other constitutionally impermissible bases. *See United States v. Armstrong,* —— U.S. at ——, 116 S.Ct. at 1486; *Oyler v. Boles,* 368 U.S. at 456, 82 S.Ct. at 505–06.

] In order to be entitled to discovery in a selective prosecution case, a plaintiff must offer "at least a colorable claim" that (1) he or she was singled out for prosecution from among others similarly situated, and (2) that his or her prosecution was improperly motivated. *See United States v. Washington,* 705 F.2d 489, 494 (D.C.Cir.1983); *Attorney General v. Irish People, Inc.,* 684 F.2d 928, 932 (D.C.Cir.1982); *Synanon Church v. United States,* 579 F.Supp. 967, 977 (D.D.C. 1984). The colorable basis standard is met by "*some evidence* tending to show the existence of the essential elements of the [claim]." *United States v. Armstrong,* —— U.S. at ——, 116 S.Ct. at 1488 (emphasis added); see *Attorney General v. Irish People, Inc.,* 684 F.2d at 932. The D.C. Circuit has emphasized that a colorable showing must be made with respect to both prongs of the test. *Attorney General v. Irish People, Inc.,* 684 F.2d at 932.

] With respect to the first prong, plaintiffs allege that they were singled out for prosecution because they opposed the election of Governor Clinton. In support of their argument, they point to a wide array of instances where Democratic candidates spoke in or campaigned at other churches and those churches were not penalized. Many of the instances cited by plaintiffs are substantially dissimilar to the instant case; they involve, for example, candidates giving speeches from pulpits or churches sponsoring political debates or forums. Some, however, warrant closer attention because they suggest greater church financial involvement

and overt advocacy of identifiable political candidates.

During the 1988 presidential campaign, for example, Reverend Jesse L. Jackson, Sr. took up collections at churches around the country. *See I.R.S. Is Urged to Investigate Jackson's Church Collections,* N.Y. TIMES at B6 (Feb. 17, 1988). In 1980, two days before the Massachusetts' congressional primary, Boston's Roman Catholic Archbishop issued a letter that was read from pulpits throughout the state urging Catholics not to vote for pro-choice candidates, an act widely understood to refer to the two Democratic candidates. *See* Anthony Lewis, *Religion and Politics,* N.Y. TIMES at A31 (Sept. 17, 1980). Pro-choice activists subsequently brought an unsuccessful action seeking to force the Department of the Treasury to revoke the Catholic Church's tax exemption. *See Abortion Rights Mobilization v. Regan,* 544 F.Supp. 471 (S.D.N.Y.1982). Finally, in 1992 the IRS issued a warning to (but did not revoke the tax exempt status of) the Jimmy Swaggart Ministries for its endorsement of Reverend Pat Robertson for president in 1986. *See Jimmy Swaggart Ministry Admits Tax Law Violation,* L.A. TIMES at F17 (Feb. 1, 1992).

These examples, although not restricted to any single political party or any one denomination, tend to suggest that the IRS treated BMI in a significantly different fashion from the way it has treated other churches and/or religious organizations that have engaged in overt political campaign activity. Specifically, plaintiffs have produced evidence that "similarly situated [churches] could have been prosecuted, but were not." *United States v. Armstrong,* —— U.S. at ——, 116 S.Ct. at 1488. The Court concludes that BMI has met its burden with respect to the first prong of the "colorable claim" test.[6]

 also must make a colorable showing that the IRS was improperly motivated when it revoked BMI's tax exemption.

**6.** Although it does not affect the outcome in this case, the Court notes that *United States v. Armstrong,* —— U.S. ——, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996), involved a criminal prosecution rather than a civil action. The Supreme Court relied heavily in its *Armstrong* decision on the fact that discovery in criminal cases is limited under Rule 16, FED.R.CRIM P. By contrast, the rules governing civil discovery create the presumption that all relevant information is discoverable, absent some privilege. *See* Rule 26, FED. R.CIV.P.

Plaintiffs argue that the draconian measure taken—revocation rather than a warning, suspension or fine—indicates that the IRS was biased against BMI. Plaintiffs also argue that the very fact that only one other church (to BMI's knowledge) has ever had its tax exempt status revoked indicates bias. *See Christian Echoes National Ministry, Inc. v. United States,* 470 F.2d 849 (10th Cir.1972) (revoking church's tax exemption). Defendant responds that such revocations are infrequent because churches are rarely so brash as to take out advertisements in national newspapers. Moreover, the IRS asserts that it was within its authority to revoke the exemption, that it was not obligated to impose a lesser sanction for such an egregious violation of the campaign ban and that plaintiffs have offered no other evidence of discriminatory intent.

[14] A plaintiff alleging discrimination is not required to produce direct evidence of intent; indeed, direct evidence of motive or intent is rarely available. As in any equal protection case, evidence concerning the unequal application of the law, statistical disparities and other indirect evidence of intent may be used to show bias or discriminatory motive. *See King v. Palmer,* 778 F.2d 878, 881 (D.C.Cir.1985) (party asserting intentional discrimination need not produce direct evidence of discriminatory intent but may demonstrate it through indirect evidence) (citing *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). *See also Wayte v. United States,* 470 U.S. 598, 608–610, 105 S.Ct. 1524, 1531–32, 84 L.Ed.2d 547 (1985) (selective prosecution cases are to be judged under ordinary equal protection standards). The D.C. Circuit has noted at least one instance where a court permitted discovery in a selective prosecution case based on inferences where no direct evidence of intent was available. *See United States v. Washington,* 705 F.2d at 494 (noting that the "trial court permitted discovery after the defendant introduced evidence suggesting a link between United States foreign policy and the Israeli government's [settlement policies]."); *United States v. Washington,* Crim. No. 81–0375, Memorandum Order at 3–8 (D.D.C. Feb. 23, 1982) (district court order granting discov-

ery); *cf. United States v. Hastings,* Crim. No. 95–37, Memorandum at 12 (W.D.N.C. May 9, 1996) (criminal tax investigator's explicit discussion of defendant's political affiliation and prominent status gave rise to inference that defendant's political beliefs played an impermissible role in the IRS's decision to prosecute).

The very rarity of an official act can support a finding of discriminatory intent, although alone it may not necessarily be a sufficient basis for such a finding. *See United States v. Al Jibori,* 90 F.3d 22, 23, 26 & n. 1 (2d Cir.1996) (the fact that it was unusual for the INS to prosecute under the statute in question focused the inquiry and increased the need for discovery). It is also true that the fact that the IRS had a number of options short of revocation—including warnings, fines and suspensions—but chose the most drastic option is probative, although not dispositive evidence of possible discriminatory intent.

Plaintiffs' evidence is by no means strong at this stage of the litigation. But without some discovery Branch Ministries could not be expected to have access to internal IRS documents, witness statements or other direct evidence of discriminatory intent. Plaintiffs have pointed to evidence that their revocation was, to say the least, unusual, and that the IRS imposed a draconian remedy. The Court concludes that plaintiffs have produced sufficient evidence to raise a colorable claim of intentional discrimination. Because plaintiffs' evidence consists mostly of the absence of other similar actions by the IRS, it may well turn out to be insufficient to withstand a decision on the merits of the selective prosecution claim. *Cf. Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) ("If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."). At this stage, however, plaintiffs have made a colorable showing sufficient to justify discovery that their political and/or religious beliefs may have played an impermissible role in the revocation of their tax exempt status.

18

### 2. I.R.C. § 6103(a)

26 U.S.C. § 6103(a) prohibits the disclosure of returns and return information. Specifically, Section 6103 prohibits the release of data regarding

> whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return of with respect to the determination of the existence, or possible existence, of liability. . . .

I.R.C. § 6103(b)(2). This language is extremely broad and appears to encompass much of the information sought by plaintiffs. Specifically, it bars the release by the IRS of the information sought in plaintiffs' Discovery Request Nos. 3A, parts of 3, 4, 4A, 5 and 24, and 22, 23 and 24A in their entirety, because these requests seek the identification of investigations of or proceedings against specific named churches or religious organizations.[7]

▆▆▆ I.R.C. § 6103(b), however, exempts from section 6103(a) "data in a form which cannot be associated with, or otherwise identify, directly or indirectly, a particular taxpayer." Insofar as BMI seeks statistical information about the IRS's investigations of churches that does not identify and cannot be associated with a particular taxpayer, plaintiffs are entitled to such information. *See Church of Scientology of California v. IRS*, 484 U.S. 9, 16, 108 S.Ct. 271, 275, 98 L.Ed.2d 228 (1987) (Section 6103's confidentiality provisions were not intended to prevent disclosure of "statistical studies and other compilations of data"). The Court notes that the IRS often releases general information about the number of audits it conducts on various classes of taxpayers. *See, e.g., IRS News Release: The Appeals Process* (Feb.1997) (breaking down IRS audits by income strata); Kenneth R. Harney, *IRS Program Could Lead to Mortgage Applicant Audits* Washington Post at E1 (Nov. 2, 1996) (report-

ing on IRS program monitoring mortgage lenders); Remarks by Roscoe Egger, Jr., Commissioner of the IRS, 1984 WL 270760 at *5 (Apr. 13, 1984) (announcing project auditing direct sellers of home products). More specifically, the IRS has already provided statistical information about the number of television ministries that have been investigated and/or had their exemptions revoked in response to informal interrogatories in *Jack Rehburg Ministries*, Docket No. 14251–93"X" (Tax Court July 6, 1993), Pl.'s Opp'n, Amended Ex. 1.

The IRS cites *Church of Scientology of California v. I.R.S.*, 484 U.S. 9, 108 S.Ct. 271, 98 L.Ed.2d 228 (1987), for the proposition that even IRS data that cannot be identified with any taxpayer is covered by Section 6103(a). This reading of that decision is too broad, for it would bar the IRS from releasing any data pertaining to tax collection at all. Rather, the Supreme Court rejected the argument that merely redacting the names or other identifying data from tax returns or other documents automatically brings those documents within the purview of section 6103(b). *Id.* at 15–17, 108 S.Ct. at 275. Statistical studies and compilations of data, so long as they take a form that cannot be identified with a particular taxpayer, are not protected. *Id.*

Accordingly, the IRS shall provide to plaintiffs a report for each year since 1980 to the present of (1) the aggregate number of IRS investigations of churches or religious organizations for violations of the campaign ban by category of sanction; (2) the number of revocations, suspensions, fines, taxes, warnings or other penalties imposed for violations of the campaign ban; (3) a breakdown of the political parties supported by the churches or religious organizations investigated and/or penalized for the violation of the campaign ban. For example, if in 1990 the IRS investigated seven religious organizations and penalized three of them for supporting Democratic candidates and four for

---

7. Since this case does not fall within one of the carefully delineated exceptions to Section 6103 the Court lacks authority to require the IRS to disclose such third party tax information. This is not, for example, a judicial proceeding "pertaining to tax administration" in which the third party churches are parties to the proceeding, 26 U.S.C. § 6103(h)(4)(A), nor is it a criminal investigation. *See* 26 U.S.C. § 6103(i).

supporting Republican candidates, the IRS should report those numbers.

Finally, plaintiffs cite I.R.C. § 6110 and *Tax Analysts and Advocates v. I.R.S.*, 362 F.Supp. 1298 (D.D.C.1973), *aff'd*, 505 F.2d 350 (D.C.Cir.1974), for the proposition that the IRS's determinations regarding the tax exempt status of other churches and religious organizations are open to public inspection.[8] The documents at issue in *Tax Analysts*, however, were not generated by IRS investigations at all but rather were private letter rulings and technical advice memoranda. *See Tax Analysts and Advocates v. I.R.S.*, 362 F.Supp. at 1301; *see also* 26 U.S.C. § 6103(b)(2)(B) (distinguishing return information from written determinations); 26 U.S.C. § 6110(j)(3) ("[A] written determination may not be used or cited as precedent.").

Since written determinations, letter rulings and technical advice memoranda are not protected by Section 6103, except as provided by Section 6103(b)(2)(B), plaintiffs are entitled to discovery of those documents if they exist. Insofar as Discovery Request Nos. 11 and 21 seek such information, the IRS must provide it. *See* 26 U.S.C. § 6110(I) (providing for the disclosure of written determinations pursuant to discovery orders made in connection with judicial proceedings). Pursuant to 26 U.S.C. § 6103(b)(2)(B), the IRS shall redact or, if necessary, withhold those parts of any written determinations that are not open to public inspection.[9] The IRS shall also respond to Discovery Request Nos. 11 and 21 by providing all publicly available IRS policy statements regarding the treatment of political activity by churches.

In view of this ruling, discovery shall proceed for three months, at the end of which the parties shall have the opportunity to

supplement their filings with respect to defendant's pending motion for summary judgment.

An Order consistent with this Opinion shall be entered this same day.

SO ORDERED.

---

8. Section 6110 provides for the public inspection of any "written determination and any background file documents relating to such written determination." I.R.C. § 6110(a). Written determinations are defined as "a ruling, determination letter, or technical advice memorandum," and background file document "includes the request for the written determination, any written material submitted in support of the request, and any communication, (written or otherwise) between the Internal Revenue Service and persons

outside the Internal Revenue Service in connection with such written determination ... received before the issuance of the written determination." I.R.C. § 6110(b)(1)–(2).

9. Again, if after discovery is provided, if plaintiffs in good faith believe that material has been improperly withheld, they may request that the Court view redacted and/or withheld material *in camera*.